# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **COREY TOLBERT** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **DAVID WISE, WARDEN, and** | ) |
| **ATTORNEY GENERAL of the** | ) |
| **STATE OF ALABAMA** | ) |
| | ) |
| **Respondent.** | ) |

**Civil Action Number:**
**4:08-CV-189-VEH-JEO**

## <u>MEMORANDUM OPINION</u>

This is a habeas corpus case brought pursuant to 28 U.S.C. § 2254 by an Alabama state prisoner, Corey Tolbert (hereinafter "Tolbert" or the "petitioner"). In his pro se petition, Tolbert attacks his conviction for felony murder during a robbery in violation of Ala. Code § 13A-6-2(a)(3) (1975), for which he was sentenced, as a habitual offender, to life imprisonment by the Circuit Court of Jefferson County, Alabama, Bessemer Division. (*See* Petition for Writ of Habeas Corpus by a Person in State Custody (the "petition" or "Pet."), Doc.[1] 1). In his petition, Tolbert raises ten constitutional claims alleging ineffective assistance of trial and appellate counsel (Pet., "Issues" "I" through "X"), a claim alleging that the state trial court erred by

---

[1] References to "Doc(s).___" are to the documents as numbered by the clerk of court in the court's record of the case.

failing to grant a new trial based upon evidence that the petitioner's co-defendant perjured himself (*id.*, "Issue XI"), and a *Batson*[2] claim (*id.*, "Issue XII").   The respondents, Warden David Wise and the Attorney General of the State of Alabama (hereinafter collectively the "State"), have filed an answer asking the court to dismiss the petition (Respondents' Response to Tolbert's Habeas Petition, (the "response" or "Resp."), Doc. 12), to which Tolbert has filed a traverse.   (Petitioner Traverse to the Respondents Response (the "traverse" or "Trav."), Doc. 17).   The court also issued an order sua sponte requiring the petitioner to show cause why his petition is not barred by the one-year statute of limitations of 28 U.S.C. § 2244(d)(1)(A). (Doc. 28).   The petitioner filed a response in opposition (Doc. 31), along with an evidentiary submission. (Doc. 32).   The petitioner has filed numerous motions seeking discovery and an evidentiary hearing.   (Docs 18, 20, 21, 22, 23, 24).   He has also filed a motion to "expand the record" (Doc. 19) and for leave to amend his petition to "clarify" two of his ineffective-assistance claims.   (Doc. 26).   Upon consideration, the court finds that Tolbert's motion to expand the record and for leave to amend be granted and that the associated materials are due to be considered by the court for what they are worth.   The court also finds that all of Tolbert's motions for discovery and for an evidentiary hearing be denied.   And finally, the court further finds that Tolbert's § 2254 petition

---

[2]*Batson v. Kentucky*, 476 U.S. 79 (1986).

itself, while timely, be denied in its entirety on procedural grounds, on the merits, or both.

## I.      BACKGROUND

In January 2004, Tolbert was indicted for the murder of Allen Atchinson, made capital because it was committed during the course of a robbery, in violation of Ala. Code § 13A-5-40(a)(2).  (*See* Trial Record[3] at C. 20-21).  Tolbert, represented by appointed counsel, pled not guilty.  The Alabama Court of Criminal Appeals summarized the evidence at trial as showing the following:

> On September 1, 2001, Dericus Martin ("Dericus"), Andre Martin ("Andre"), Kenya Oliver, and Alan Atchinson drove from Jemison to Birmingham where they met Carl Moneyham at a prearranged location. Davis Ardis and the [petitioner] Tolbert were with Moneyham.  Dericus, Andre, Oliver, and Atchinson then followed Moneyham, Ardis and Tolbert to a house in Bessemer, where they were supposed to purchase drugs.  Testimony indicated that Dericus gave Moneyham approximately $500 for the drugs and Moneyham then went into the house to retrieve the drugs, while the others stayed outside.  While Moneyham was inside, Ardis and Tolbert decided to rob the other four.  Ardis and Tolbert, armed with guns, approached the vehicle in which Dericus, Andre, Oliver, and Atchison were sitting, and ordered the four out of the vehicle and onto the ground.  Dericus, Andre, Oliver, and Atchison got out of the car and laid on the ground, at which point Ardis and Tolbert went through their pockets.  Tolbert then shot Atchison in the back.  After the shooting, Dericus, Andre, and Oliver fled the scene, found a police officer, and reported the incident.

---

[3]The Trial Record is Exhibit A to the Respondents' Answer to the Petition, which is Doc. 12.  Hereinafter, Exhibits to that Document will be cited as "Ex. ___."  The Trial Record is comprised of four volumes, which include the Clerk's record ("C. ___") the trial transcript ("R. ___"), and the sentencing hearing transcript ("S.R. ___").

(Direct Appeal Opinion[4] at 2).   A jury convicted Tolbert of the lesser-included offense of felony murder during a robbery, in violation of Ala. Code § 13A-6-2(a)(3) (1975).   (Trial Record at C. 156, 191).   He was sentenced to life imprisonment pursuant to Alabama's Habitual Felony Offender Act, Ala. Code § 13A-5-9 (1975). (*Id.* at C. 192).   Tolbert timely appealed to the Alabama Court of Criminal Appeals, raising a *Batson* claim and arguing that the trial court had erred in denying his motion for a new trial on the ground that his co-defendant Moneyham perjured himself by testifying that he was not expecting anything from the prosecutor in exchange for testifying.   (*See* Tolbert's Direct Appeal Brief[5]).   The Alabama Court of Criminal Appeals issued an unpublished memorandum on October 14, 2005, affirming his conviction, rejecting both of his claims on the merits.   (Direct Appeal Opinion). Tolbert did not seek rehearing in that court nor certiorari review in the Alabama Supreme Court, and the Alabama Court of Civil Appeals issued its certificate of judgment pursuant to Rule 41, ALA. R. APP. P., on November 2, 2005.   (Direct Appeal Certificate of Judgment[6]).

On November 28, 2006, Tolbert filed a pro se petition for post-conviction relief

---

[4]The opinion of the Alabama Court of Criminal Appeals on direct appeal is Ex. D.

[5]Tolbert's Brief on Direct Appeal is Ex. B.

[6]The Certificate of Judgment issued by the Alabama Court of Criminal Appeals on direct appeal is Ex. E.

4

in the state court of conviction pursuant to Rule 32, ALA. R. CRIM. P. (Rule 32 Record[7] at 8-42, 61-69). A cover letter included with the Rule 32 petition and the "Petitioner's Verification" page of the petition indicate that Tolbert tendered his Rule 32 petition for mailing on November 2, 2006. (*Id.* at 2, 7, 15). In his Rule 32 petition, Tolbert raised ten claims alleging that his trial and appellate counsel were, for various reasons, constitutionally ineffective. (*Id.* at 16-35). The state trial court summarily denied Tolbert's Rule 32 petition. (*Id.* at 3). Tolbert appealed that denial to the Alabama Court of Criminal Appeals. (*See* Tolbert's Rule 32 Appellate Brief[8]). On September 7, 2007, the Alabama Court of Criminal Appeals, by unpublished memorandum, affirmed the trial court's summary denial of the Rule 32 petition. (Rule 32 Appeal Opinion[9]). Tolbert applied for rehearing, which was overruled. (Rule 32 Application for Reh'g[10]). On November 1, 2007, he petitioned for certiorari review in the Alabama Supreme Court. (Rule 32 Cert. Pet.[11]). On February 1, 2008, while that petition for certiorari was pending, Tolbert filed his instant petition for a writ of habeas corpus in this court pursuant to 28 U.S.C. § 2254. (Pet. at 1). Tolbert

---

[7]The Record on Appeal of the Rule 32 Proceedings is Ex. F.

[8]Tolbert's Rule 32 Appellate Brief is Ex. G.

[9]The opinion of the Alabama Court of Criminal Appeals in the Rule 32 case is Ex. J

[10]Tolbert's Application for Rehearing in the Rule 32 Appeal is Ex. K.

[11]Tolbert's Petition for Certiorari in the Alabama Supreme Court in the Rule 32 case is Ex. M.

signed the § 2254 petition and dated it January 5, 2008.  (*Id.* at 7).  On February 15, 2008, the Alabama Supreme Court denied certiorari in the Rule 32 case, and the Alabama Court of Criminal Appeals issued its certificate of judgment the same day. (Order Denying Certiorari in Rule 32 Case; Certificate of Judgment in Rule 32 Case[12]).

In his § 2254 petition, Tolbert asserts the following failures or shortcomings of counsel in support of his claims alleging ineffective assistance of counsel:

Issue[13] I:    that trial counsel failed to move to dismiss the indictment on the ground that it did not specifically allege that he was being charged as an accomplice;

Issues II, III:    that trial counsel failed to object on hearsay grounds to testimony by a state witness, Latory Andre Martin, used to establish the theft of $530.00 by Tolbert (the predicate felony for his felony-murder conviction) and to establish "motive";

Issue IV:    that trial counsel failed to move for an acquittal on the ground that there was insufficient evidence to corroborate the testimony of a co-defendant, in violation of Ala. Code § 12-21-222 (1975);

Issue V:    that appellate counsel failed to raise his claim that he was entitled to a new trial based on threats allegedly made to the jury;

---

[12]The order of the Alabama Supreme Court denying certiorari review in the Rule 32 case is Ex. N.  The Certificate of Judgment issued by the Alabama Court of Criminal Appeals in the Rule 32 case is Ex. O.

[13]References to "Issue __" in this section correspond to the designations Tolbert has made to his claims in his § 2254 petition, or more accurately, what amounts to the legal brief that he has appended to his petition form.  That brief is encompassed within Doc. 1, from pages 8 to 35.

6

Issue VI:      that trial counsel failed to move to dismiss the indictment on the ground that it fails to allege "the essential elements of the capital murder statute in its entirety";

Issue VII:     that trial counsel failed to move to dismiss the indictment on the ground that Ala. Code § 13A-5-40(a)(2), defining the capital offense for which Tolbert was indicted, is unconstitutional because the Alabama Constitution of 1901 violates the Equal Protection Clause of the Fourteenth Amendment;

Issue VIII:    that trial counsel failed to investigate and be aware of residency requirements for jury service under Ala. Code § 12-66-60 (1975) and object to jurors who were not so qualified;

Issue IX[14]:  that trial counsel failed to object to the trial court's jury instructions on the ground that they "took [away]" the jury's "de facto power of nullification; and

Issue X:       that his appellate counsel failed to file a petition certiorari to the Alabama Supreme Court or to give Tolbert an opportunity to do so himself, so that he might exhaust his claims in the state courts.

(Pet. at 8 to 27). Tolbert also raises the two additional claims that he asserted on

his direct appeal:

Issue XI:      that the trial court erred by failing to grant a new trial based upon the fact that Tolbert's co-defendant, Carl Moneyham, gave perjured testimony at trial to the effect that he had no "deal" with the State; and

Issue XII:     that the trial court erred by failing to grant a new trial based

---

[14]Tolbert erroneously enumerates this claim as "Issue VIIII." (Pet. at 24).

upon an alleged *Batson* violation by the prosecution in its exercise of peremptory strikes.

(Pet. at 28-31).

In its response to Tolbert's § 2254 petition, the State contends that he is not entitled to an evidentiary hearing on any issue and that his petition is due to be denied in its entirety. The State recognizes that "it appears" that Tolbert's petition was timely filed, but it says that none of the claims provide a basis for habeas relief. (Resp. at 9). Specifically, with respect to the claims asserted in the petition that were raised on direct appeal, Issues XI and XII, the State contends that they are procedurally defaulted as unexhausted and are further due to be rejected even assuming they are properly before the court. (Resp. at 9-14). With regard to the remaining claims, Issues I to X, which each allege ineffective assistance of counsel, the State argues that they were correctly decided against the petitioner in the Rule 32 proceedings and that Issue VII is further barred because it was rejected based upon an adequate and independent state procedural ground.

## II.   DISCUSSION

### A.   The Statute of Limitations

Tolbert's § 2254 petition is subject to the one-year statute of limitation, commencing from "the date on which the judgment became final by the conclusion

of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Although the State has recognized in its response that "it appears" that Tolbert's petition complies with the statute of limitations, federal district courts are permitted to consider, sua sponte, the timeliness of a § 2254 petition, even after the pre-answer, initial screening stage of the proceeding, provided the petitioner is afforded fair notice and an opportunity to respond prior to dismissal on such ground. *Day v. McDonough*, 547 U.S. 198, 207-10 (2006). The court previously entered a show cause order granting Tolbert notice and an opportunity to be heard on the statute of limitations question. Accordingly, the court would be authorized to dismiss the action based upon the statute of limitations if the court were to determine that the petition was untimely filed. After examining the issue, which is an unsettled one in this circuit and the source of a split in others, the court believes that there is a substantial argument that Tolbert's petition is untimely by more than fourteen months. Ultimately, however, the undersigned concludes that Tolbert's petition is timely, albeit with not a single day to spare, as explained below.

Where a defendant is convicted in a state court and he fails to appeal, his conviction is considered "final" for purposes of § 2244(d)(1)(A) when the time lapses under state law for the defendant to have filed an appeal. *McCloud v. Hooks*, 560 F.3d 1223, 1228 (11th Cir. 2009); *Bridges v. Johnson*, 284 F.3d 1201, 1202 (11th Cir.

2002).  On the other end of the spectrum, where a defendant pursues a direct appeal to the state court of last resort but does not seek review in the United States Supreme Court, the limitations period begins to run upon the expiration of the time in which he could have filed a petition for certiorari in the United States Supreme Court, ninety days after the state court of last resort issues its decision denying review, affirming on the merits, or denying a timely application for rehearing.  *See Chavers v. Secretary, Florida Dep't of Corr.*, 468 F.3d 1273, 1274-75 (11th Cir. 2006); *Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002); *Nix v. Secretary for Dep't of Corr.*, 393 F.3d 1235, 1236-37 (11th Cir. 2004).  Tolbert's case deals with a middle ground, whereupon a state prisoner pursues his direct appeal to an intermediate appellate court but fails to seek review in the state's highest court.  Where a defendant forgoes available review in the state court of last resort, he is also ineligible for review in the United States Supreme Court, and he is not, therefore, given the benefit of the ninety-day period to petition for certiorari in the latter.  *Pugh v. Smith*, 465 F.3d 1295, 1299-1300 (11th Cir. 2006).  Discretionary review is sufficiently available in the Alabama Supreme Court such that a defendant who does not seek such review does not receive the benefit of the 90-day period to petition for certiorari in the United States Supreme Court when calculating the limitations period under § 2244(d)(1).  *Anderson v. Mosely*, 2009 WL 509320, *4 (M.D. Ala. 2009); *Morgan v. Jones*, 2008 WL

10

4368996, *2 (S.D. Ala. 2008); *Mays v. McDonnell*, 2006 WL 2927474, *4 (M.D. Ala. 2006); *cf. Smith v. Jones*, 256 F.3d 1135, 1140-41 (11th Cir. 2001) (defendant who failed to petition for certiorari in the Alabama Supreme Court on direct appeal had not exhausted available state remedies for purposes of 28 U.S.C. § 2254(b)(1)).

It is an open question in this circuit, however, as to what particular event or date triggers the commencement of the limitations period of § 2244(d)(1)(A) where a prisoner's direct appeal ends in the Alabama Court of Criminal Appeals.  There are two plausible trigger dates, each of which has been used in unpublished Eleventh Circuit cases and in various district court opinions.  The first, and earlier, trigger date is fourteen days after the Alabama Court of Criminal Appeals issues its decision affirming a conviction.  *See Cox v. Ferrell*, 262 Fed. Appx. 147, 148, 2008 WL 90088, **1 (11th Cir. 2008); *Gay v. Hooks,* 2009 WL 801777, *2 & n.5 (M.D. Ala. 2009); *Varner v. Mosley* , 2009 WL 103179, *2 (M.D. Ala. 2009).  Such marks the expiration of the time in which the defendant can apply for rehearing in the court of appeals, a prerequisite for seeking discretionary review in the Alabama Supreme Court.  *See* Rules 39(c)(1), Rule 40(c), and Rule 40(d), ALA. R. APP. P.  Thus, the passing of the deadline to apply for rehearing will ordinarily mean as a practical matter that no further review will be forthcoming, except in the relatively rare case in which a defendant is able to secure leave to apply for an out-of-time rehearing

11

under Rule 2(b), ALA. R. APP. P., or the Alabama Court of Criminal Appeals sets the case for rehearing *ex mero motu*. *See generally State v. Martin*, ___ So. 3d ___, ___, 2009 WL 2657617, *15 (Ala. Crim. App. Aug. 28, 2009).

The alternative trigger is the date that the Alabama Court of Criminal Appeals issues its certificate of judgment. *See Lang v. Alabama*, 179 Fed. Appx. 650, 2006 WL 1208056 (11th Cir. 2006); *Brown v. Hooks*, 176 Fed. Appx. 949, 951, 2006 WL 1004865, *1 (11th Cir. 2006); *Morgan v. Jones*, 2008 WL 4368996, *2 (S.D. Ala. 2008). Under Alabama law, the certificate of judgment is due to issue automatically eighteen days after entry of an appellate court's decision unless a party has filed a timely application for rehearing in the court of appeals or a timely petition for certiorari in the Alabama Supreme Court. Rule 41, ALA. R. APP. P.; *Lewis v. State*, 842 So. 2d 731, 732 (Ala. Crim. App. 2001). The certificate functions akin to an appellate mandate in federal practice under Rule 41, FED. R. APP. P., serving as the legal process that issues following an appellate court's decision, formally terminating the appeal and divesting the appellate court of jurisdiction. *See* Rule 41, ALA. R. APP. P.; *Grantham v. State*, 540 So. 2d 779, 780-81 (Ala. 1988); *Robinson v. State*, 629 So. 2d 3, 4 (Ala. Crim. App. 1993). Under Alabama law, the issuance of the certificate of judgment establishes finality of a state conviction on direct appeal. *See Ex parte State*, 566 So. 2d 758, 759 n.2 (Ala. 1990) ("A judgment of the Court of Criminal

12

Appeals is not yet final until that court issues its certificate of judgment"); *Gaddy v. State*, 952 So. 2d 1149, 1173 (Ala. Crim. App. 2006) (conviction deemed final upon issuance of certificate of judgment for purposes of applying new Supreme Court rule in post-conviction proceedings); *Rogers v. State*, 782 So. 2d 847 (Ala. Crim. App. 2000) (recognizing that a trial court lacks jurisdiction to resolve a petition for post-conviction relief under Rule 32, ALA. R. CRIM. P., until a certificate of judgment issues on direct appeal); *Gordon v. State*, 710 So. 2d 943, 945 (Ala. Crim. App. 1998) (holding that a trial court lacked jurisdiction to retry a defendant until a certificate of judgment issued); *Massey v. State*, 587 So. 2d 448, 449 (Ala. Crim. App. 1991) (stating that issuance of certificate of judgment triggers duty of defendant out on bond pending appeal to surrender himself to begin serving sentence); *see also* Ex. E (the certificate of judgment in Tolbert's direct appeal concludes: "NOW, THEREFORE, pursuant to Rule 41 of the Alabama Rules of Appellate Procedure, it hereby certified that the aforesaid judgment is final.").  The issuance of the certificate also expressly commences the running of Alabama's own one-year statute of limitations applicable to state applications for post-conviction review.  *See* Rule 32.2(c)(1), ALA. R. CRIM. P.; *Thomas v. State*, 893 So. 2d 563, 564 (Ala. Crim. App. 2002).

Because the "application-for-rehearing" deadline will typically fall only about

four days before the certificate of judgment is issued,[15] whether a court employs one trigger versus the other typically is not dispositive of whether an Alabama prisoner's § 2254 habeas petition is timely.[16]   Under the particular circumstances of Tolbert's case, though, the choice between the two trigger dates, even though they are only five days apart, makes all the difference.  The Alabama Court of Criminal Appeals issued its decision affirming Tolbert's conviction on October 14, 2005.  If one uses the first trigger, the federal clock to file a § 2254 petition would commence running on October 28, 2005, the expiration of the fourteen-day period to apply for rehearing, and lapse on October 30, 2006.[17]

   After his direct appeal was concluded (by whatever measure its finality) but

----

[15]Some district courts have used yet another date to start the running of the federal limitations period: fourteen days after the Alabama Court of Criminal Appeals issues its certificate of judgment. *See, e.g., Dafney v. Giles*, 2009 WL 1940806, *1 & n.3 (M.D. Ala. 2009); *Phillips v. Hetzel*, 2009 WL 1441727, *1 & n.2 (M.D. Ala. 2009); *Trawick v. Culliver*, 2008 WL 4767463, *3 (M.D. Ala. 2008). The use of that date is founded upon an assumption that it represents the expiration of the period to timely petition for certiorari in the Alabama Supreme Court.  *Id.*  That assumption, however, is clearly invalid. Rule 39(c)(2), ALA. R. APP. P., specifies that the event triggering the fourteen-day period to petition for certiorari in the Alabama Supreme Court in a criminal case is the order of the Alabama Court of Criminal Appeals denying the application for rehearing, not the issuance of the certificate of judgment.  Likewise, Rule 41(b), ALA. R. APP. P., provides that the certificate of judgment is not to issue if a timely petition for certiorari in the Alabama Supreme Court has been filed.  *See also Jackson v. State*, 566 So.2d 758, 759 n.2 (Ala.1990).  Accordingly, this third option is not a plausible choice for the trigger date.

[16]The "certificate" trigger date seems to be used in more district court opinions.  However, because the choice of dates does not appear to have been dispositive of the timeliness issue, many decisions simply assume for purposes of the disposition that the later "certificate" date applies while tacitly acknowledging the potential applicability of the earlier "application-for-rehearing" deadline. *See, e.g.,  Anderson*, 2009 WL 509320, *4 (stating that period began to run "no later than" issuance of certificate); *Rodgers v. Culliver*, 2005 WL 1331287, *12 (M.D. Ala. 2005) ("Thus, the court concludes that Petitioner's conviction became final by operation of law on January 4, 1999 [when the time expired to apply for rehearing in the Alabama Court of Criminal Appeals], or at the latest, January 6, 1999 [when the certificate of judgment was entered].")

[17]The limitations period is calculated using the "anniversary method," *Downs v. McNeil*, 520 F.3d 1311, 1317-18 (11th Cir. 2008), which would yield a determination here that the period was due to end on October 28, 2006.  However, that date fell on a Saturday, so the limitations period would extend to the end of Monday, October 30, 2006, representing the next day that was not a Saturday, Sunday, or a legal holiday.  *See* Rule 6(a)(3), FED. R. CIV. P.

before filing his § 2254 habeas petition, Tolbert filed a petition in state court for post-conviction relief pursuant to Rule 32, ALA. R. CRIM. P.  A Rule 32 petition, if "properly filed," 28 U.S.C. § 2244(d)(2), can qualify as a pleading that tolls the federal limitations period.  *McCloud v. Hooks*, 560 F.3d 1223, 1227 (11th Cir. 2009).  However, a Rule 32 petition filed after the expiration of the federal limitations period does not revive or toll the federal limitations period.  *Melson v. Allen*, 548 F.3d 993, 998 (11th Cir. 2008); *see also Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000).  Even giving Tolbert the benefit of the prison mailbox rule, *see Houston v. Lack*, 487 U.S. 266, 270 (1988); *Ex parte Powell*, 674 So. 2d 1258, 1259 (Ala. 1995); his Rule 32 petition would be deemed filed no earlier than the date that it is signed, November 2, 2006.[18]  *See McCloud,* 560 F.3d at 1227; *Holland v. State*, 621 So. 2d 373, 375 (Ala. Crim. App. 1993).  That would have been three days after the expiration of the federal limitations period using the first trigger date, so Tolbert's filing of his Rule 32 petition would not reset or toll the already-expired federal clock.

---

[18]Tolbert contends that the mailing of his Rule 32 petition was delayed because he allegedly attempted on October 27th, 30th, and 31st of 2006 to have his petition notarized to comply with the verification requirement of Rule 32.6(a), ALA. R. CRIM. P., but prison personnel did not do so until November 1, 2006.  (*See* Petitioner's Response to Order to Show Cause, Doc. 31 ("Pet. Resp. to OSC") at 5-6).  To the extent that Tolbert may be arguing that his petition should be deemed filed under the prison mailbox rule on one of these dates based upon his unsuccessful attempts to have his Rule 32 petition notarized, the court rejects such argument. *Cf. Adams v. United States*, 173 F.3d 1339, 1341 (11th Cir. 1999) (rejecting a prisoner's argument that his pleading should have been deemed filed upon the date that he presented it to prison authorities for photocopying; "none of this Circuit's cases applying the mailbox rule ... has extended [it] beyond issues relating to a prison inmate's lack of direct access to the mail."); *see also generally Smith v. State*, 918 So. 2d 141, 153-54 (Ala. Crim. App. 2005) (recognizing that the lack of verification under Rule 32.6(a) does not deprive a court of jurisdiction to consider a Rule 32 petition; even if the State raises lack of verification, a prisoner is generally afforded a reasonable time, at least 60 days, to cure the defect, and the amended petition would relate back to the date of filing of the original).

Accordingly, Tolbert's § 2254 petition, deemed filed on January 5, 2008, would be untimely by more than fourteen months.[19]

On the other hand, if one uses the certificate of judgment issuance as the trigger, Tolbert's petition is timely. The Alabama Court of Criminal Appeals court issued its certificate of judgment on November 2, 2005, the nineteenth day following the affirmance of Tolbert's conviction.[20] Accordingly, the one-year federal limitations period of § 2244(d)(1)(A) would have expired on November 2, 2006. *See Downs*, 520 F.3d at 1317-18. On that very last day of the limitations period, Tolbert would be deemed to have filed his Rule 32 petition in state trial court. That petition

---

[19]Tolbert also contends that he qualifies for equitable tolling of the limitations period. (*See* Petitioner's Response to Show Cause Order, Doc. 31 ("Pet. Resp. to OSC")). In order for equitable tolling to apply, a petitioner must show both (1) that he had been pursuing his rights diligently and (2) that some extraordinary circumstance beyond his control stood in his way and prevented timely filing. *Melson*, 548 F.3d at 1001. The same standard applies to Rule 32, ALA. R. CRIM. P., petitions. *Ex parte Ward* [No. 1051818], ___ So. 2d ___, ___, 2007 WL 1576054, *7-8 (Ala. June 1, 2007). In support of this claim, Tolbert alleges the following: (1) that his appointed appellate counsel on direct review failed to petition for certiorari in the Alabama Supreme Court or to advise Tolbert of such failure until November 1, 2005; (2) that he did not receive a copy of his trial transcript until January 10, 2006; (3) that the prison established a policy in or about September 2006 whereby an inmate was entitled to only eight sheets of typing paper per week; (4) that he attempted to have prison personnel notarize his Rule 32 petition on October 27, 30, and 31, 2006, but they refused or otherwise failed to do so until November 1, 2006. The court concludes that none of these allegations support equitable tolling. Even assuming that omissions by Tolbert's counsel in October 2005 prevented Tolbert from exhausting state remedies under § 2254(b), such fails to suggest Tolbert was prevented *one year later* from timely filing either his Rule 32 petition or his § 2254 petition. *See Kirby v. Forniss*, 2008 WL 4493420, *4 (M.D. Ala. 2008). In any event, "attorney negligence, even gross negligence, does not warrant equitable tolling." *Melson*, 548 F.3d at 1001. Rather, there must be "an allegation and proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part" in order for a court to find there was such egregious attorney misconduct that a petitioner is entitled to equitable tolling." *Id.* The court also does not see how the fact that Tolbert received his trial transcript in January 2006 or the alleged prison limitations on paper supply actually thwarted his efforts to file either his Rule 32 petition or his § 2254 petition. *Cf. Arthur v. Allen*, 452 F.3d 1234, 1253 (11th Cir. 2006) (prisoner failed to demonstrate how claimed deficiencies in the prison law library thwarted his efforts to file timely). And finally, Tolbert's difficulties in having his Rule 32 petition notarized at the proverbial last minute do not constitute extraordinary circumstances beyond his control, nor do they show diligence. *Cf. Sandvik v. United States*, 177 F.3d 1269, 1272 (11th Cir. 1999) (equitable tolling not warranted to excuse late filing based upon counsel's decision to use regular mail to send § 2255 motion five days before the statute ran).

[20]It is unclear why the certificate of judgment in Tolbert's case was delayed one day beyond the time specified for issuance by Rule 41, ALA. R. APP. P., but it is of no moment in this case.

was timely under one-year Alabama statute of limitations (*see* Rule 32 Appeal Opinion at 2), which is expressly tied to the certificate of judgment, *see* Rule 32.2(c), ALA. R. CRIM. P., and there is no suggestion that the petition was otherwise not "properly filed" for purposes of § 2244(d)(2).  Tolbert's filing of his Rule 32 petition would have thus tolled the still-unexpired federal limitations period.  And because Tolbert filed his § 2254 petition in this court while his petition for certiorari review of the denial of Rule 32 petition was still pending in the Alabama Supreme Court, his § 2254 petition would be deemed timely.  Therefore, the choice of the trigger date here matters.

As indicated above, neither the Supreme Court nor the Eleventh Circuit has purported to decide authoritatively whether a conviction in this context has become "final" for purposes of 2244(d)(1)(A) upon the expiration of the time to seek further state review or upon issuance of an appellate mandate or like final process.  The Eleventh Circuit has stated that a Florida prisoner's conviction that ended in a Florida District Court of Appeal became final under § 2244(d)(1)(A) "upon issuance of the mandate on his direct appeal," based upon Florida law's contemplation of when a conviction becomes "final."  *Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001).  However, that case involved a prisoner in Florida rather than Alabama, and there is no indication that any party argued or the court considered the potential applicability

of an alternative trigger date, linked to the expiration of the time to seek further direct review or otherwise.[21]  Thus, *Tinker*'s use of a "mandate" trigger is not binding.  *See Cooper Indust., Inc. v. Aviall Services, Inc.*, 543 U.S. 157, 170 (2004) ("'Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not entitled to be considered as having been so decided as to constitute precedents.'" (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)); *Ingram v. Commissioner of Social Sec. Admin.*, 496 F.3d 1253, 1265 (11th Cir. 2007) ("'Judicial opinions do not make binding precedents; judicial decisions do.'" (quoting *Dantzler v. IRS*, 183 F.3d 1247, 1251 (11th Cir. 1999)).  Statements from subsequent Eleventh Circuit published cases tend to lend some inferential support to the use of an "expiration" trigger date rather than a "mandate" one.  *See Pugh*, 465 F.3d at 1299 (holding that where a prisoner's direct appeal ended in the Georgia Court of Appeals, his conviction became final "when the 10-day period for seeking review in the Supreme Court of Georgia expired"); *Spottsville v. Terry*, 476 F.3d 1241, 1243 (11th Cir. 2007) (same, citing *Pugh*); *Alexander v. Secretary, Dep't of Corr.*, 523 F.3d 1291, 1293 n.1 (11th Cir. 2008) (suggesting that, if a Florida prisoner's case had been eligible to seek review in the Florida Supreme Court, his conviction would have become final on "the date on which the 30-day period to file a notice to invoke the

---

[21]Indeed, the facts recited in *Tinker* indicate that the § 2254 petition there would have been untimely even the petitioner had been given the benefit of the 90-day period in to petition for certiorari in the United States Supreme Court.

discretionary jurisdiction of the Florida Supreme court would have expired."). However, the court does not consider these cases binding either, for, like *Tinker*, they give no hint that any party posed or the court considered the possibility of an alternative, "mandate"-based trigger.

The Eleventh Circuit has also held, however, in a related setting that Florida post-conviction proceedings remained "pending" for purposes of statutory tolling under § 2244(d)(2) until the appellate mandate issued, and not before, as the state had argued, because Florida law treated the collateral proceedings as still pending until that time. *Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000); *also cf. Day*, 547 U.S. at 203 (citing *Nyland* as holding that "under Florida law, appellate order 'is pending' until the mandate issues"); *Lawrence v. Florida*, 549 U.S. 327, 330-31 (2007) (Court refers five times to the issuance of the mandate by Florida state courts as the "final judgment" when assessing when a state post-conviction application was "pending" for purposes of § 2244(d)(2)).  The Eleventh Circuit has also deemed issuance of the mandate to mark finality of an appeal in other contexts.  *See United States v. Dayton*, 981 F.2d 1200, 1203 (11th Cir. 1993) (holding that issuance of appellate mandate establishes a "final judgment" for purposes of period to file a motion for a new trial based upon newly discovered evidence under former version of Rule 33, FED. R. CRIM. P.); *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1338 (11th Cir.

19

2001) ("When this Court's mandate issues, the appeal will no longer be pending and a final order on appeal will have been entered.  Hence, [a stay] will terminate upon issuance of this Court's mandate." (internal quotation marks and citation omitted)); *Flagship Marine Services, Inc. v. Belcher Towing Co.*, 23 F.3d 341, 342 (11th Cir. 1994) ("Until the mandate issues, an appellate judgment is not final; the decision reached in the opinion may be revised by the panel, or reconsidered by the en banc court, or certiorari may be granted by the Supreme Court.").

The only federal courts of appeal that appear to have expressly decided this particular issue are split.  The Fifth and Ninth Circuits have held that, where a prisoner's direct appeal terminates prior to the state court of last resort, his conviction becomes final under § 2244(d)(1)(A) upon the expiration of the time for performing the next step required to seek further state review, regardless of when the state court issues its mandate.  *See Roberts v. Cockrell*, 319 F.3d 690, 693-95 (5th Cir. 2003); *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008); *Wixom v. Washington*, 264 F.3d 894, 897-98 (9th Cir. 2001); *Hemmerle v. Schriro*, 495 F.3d 1069, 1073-74 (9th Cir. 2007).  Both of these courts have reasoned that the question of when § 2244(d)(1)(A)'s limitations period is triggered is a matter of federal law and that state-law notions of finality, including as they might pertain to the significance an appellate mandate, do not govern.  *See Roberts*, 319 F.3d at 693-94; *Wixom*, 264 F.3d

at 897-98 & n.4.  They also noted that a trigger linked to the expiration of the period for seeking review beyond an intermediate appellate forum is consistent with the established use of an "expiration"-based trigger in other circumstances in which prisoners forego available steps in the direct review process, in particular where prisoners fail to petition for certiorari in the United States Supreme Court (and where they fail to appeal at all).  *See Roberts*, 319 F.3d at 693-95; *Wixom*, 264 F.3d at 897-98.

The Eighth Circuit, however, has rejected such an approach.  In *Riddle v. Kemna*, 523 F.3d 850 (8th Cir. 2008) (en banc), that court held that, where a prisoner's conviction was affirmed by the Missouri Court of Appeals, the issuance of the direct-appeal mandate constituted the "conclusion of direct review" under § 2244(d)(1)(A) and that the limitations period was not triggered, as the State had urged, by the earlier date upon which the time expired to file for discretionary review in the Missouri Supreme Court.  523 F.3d at 856-57; *see also Shelton v. Purkett*, 563 F.3d 404 (8th Cir. 2009).  The Eighth Circuit acknowledged that the interpretation of when the statute of limitations commences under § 2244(d)(1)(A) constitutes a federal rule of "finality," but the court maintained that the application of that rule will depend in each case upon "the varying facts of the state procedure."  *Riddle*, 523 F.3d at 856.  In the case before it, the Eighth Circuit recognized, the prisoner's failure to

file a motion to transfer his appeal to the Missouri Supreme Court within 15 days
after the Missouri Court of Appeal's affirmance, as allotted under MO. SUP. CT. R.
83.02, marked "the expiration of the time for seeking [direct] review.'" *Riddle*, 523
F.3d at 856 (quoting § 2244(d)(1)(A) (bracketed word original)).  Nonetheless, the
court held that this "expiration" trigger does not apply "*if* the alternative trigger,
'conclusion of direct review,' occurs later." *Id.* (emphasis original).  In *Riddle* itself,
the court held that the conclusion of direct review had indeed occurred later, when the
Missouri Court of Appeals issued its mandate, which was the end of the appeal under
state practice and court rules.  *See Riddle*, 523 F.3d at 856 (citing *Payne v. Kemna*,
441 F.3d 570, 572 (8th Cir. 2006)); *see also Payne*, 441 F.3d at 572 (holding that a
court "must examine the particular state's procedure to determine when the process
has reached completion or final resolution" to assess when a post-conviction
application is no longer "pending" under § 2244(d)(2) (citing *Nyland*, 216 F.3d at
1267)).

        This court does not perceive the respective approaches taken by either the Fifth
and Ninth Circuits on the one hand and the Eighth Circuit on the other to be
inherently unreasonable.  Nonetheless, the court believes that the Eleventh Circuit,
if faced squarely with this question, would side with the Eighth Circuit.  In *Nyland*,
the Eleventh Circuit held that a state post-conviction application remained "pending"

under § 2244(d)(2), tolling the limitations period, until the appellate mandate issued and not earlier, based upon its interpretation that Florida law treated the application as pending until that time.   That appears to be the only published case in which Eleventh Circuit has been confronted with competing arguments regarding the effect of a state court appellate mandate or like process in connection with the running of the limitations period.   A rationale used to determine whether an "application for State post-conviction or other collateral review ... is pending" under § 2244(d)(2) is not necessarily valid when determining "the date on which [a] judgment became final by the conclusion of direct review or the expiration for seeking such review" under § 2244(d)(1)(A).   *See Lawrence*, 549 U.S. at 333.   Nonetheless, the Eleventh Circuit has construed the two subsections in like fashion when examining running of the limitations period based upon the status of state court proceedings, whether in connection with a direct appeal or a state application for post-conviction relief.   *See Cramer v. Secretary, Dep't of Corr.*, 461 F.3d 1380, 1383 & n.5 (11th Cir. 2006) (holding that a state application for post-conviction relief remained pending under § 2244(d)(2) during the period in which the prisoner could have sought to appeal the denial of his state application, even though no appeal was ever filed; recognizing that the same rule applied to determine when the limitations period begins to run under § 2244 (d)(1)(A)); *see also Nyland*; *Tinker*, *supra*.   The court does not perceive a

23

substantial basis to depart from *Nyland*'s rationale here; it makes little sense to say that the issuance of the appellate mandate marks the end of state post-conviction proceedings based upon the mandate's significance under state law and yet ignore the issuance of the mandate on direct appeal that state law would likewise deem to conclude those proceedings.  Such is also consistent with the Eleventh Circuit's approach in *Tinker*, even if the case is not binding.

The court agrees with the Eighth Circuit's intimation that § 2244(d)(1)(A)'s trigger based upon the "expiration of the time for seeking ... review [on direct appeal]," should, at least generally, be applied only where such date would occur after "the conclusion of direct review."  It seems that the inclusion of the "expiration" trigger was likely intended to afford a prisoner the benefit of *additional* time during which he might seek further review but his direct appeal might otherwise be deemed final under state law.  The provision does not strike the court as calculated to *hasten* when a direct appeal is deemed "final" or to have reached its "conclusion" despite contrary state law or practice.  Nor does the court see why it is necessary or appropriate to construe "direct review" to have reached its "conclusion" under § 2244(d)(1)(A) based upon the expiration of the time under state law for taking the next step to secure additional review where state law and practice do not regard the appeal to have reached its end until the issuance of a final appellate order.  It may be

24

that in nearly all Alabama cases, as in the federal courts, that an appeal is "over," practically speaking, once time limits preclude a litigant from seeking further review. But "nearly all" does not mean "all." *See generally State v. Martin*, ___ So. 3d ___, ___, 2009 WL 2657617, *15 (Ala. Crim. App. Aug. 28, 2009) (recognizing that the Alabama Court of Criminal Appeals possesses discretion pursuant to Rule 2(b), ALA. R. APP. P., to extend the time for filing an application for a rehearing or to place a case on rehearing *ex mero motu*).   Moreover, the issuance of an appellate mandate or its equivalent has significance, in terms that are not only legal, as already discussed, but also moral, *see Calderon v. Thompson*, 523 U.S. 538, 556 (1998) ("When lengthy federal proceedings have run their course and a mandate denying relief has issued, finality acquires an added moral dimension."), and sometime very practical, *see Massey,* 587 So. 2d at 449 (stating that issuance of certificate of judgment triggers duty of the defendant out on bond pending appeal to surrender himself to begin serving sentence); *Ostrer v. United States*, 584 F.2d 594, 598 (2d Cir. 1978) ("The practical effect of the mandate's issuance, at least with respect to appellants facing criminal sentences, is to authorize the executive branch to insure compliance with whatever sentence was imposed by the district court.").   Accordingly, issuance of such final process from the appellate court is reasonably and naturally viewed as the "conclusion of direct review" for purposes of § 2244(d)(1)(A)

25

in this setting.  Therefore, the court concludes that, at least in these circumstances, where certiorari review cannot be had in the United States Supreme Court and a certificate of judgment issues from the Alabama Court of Criminal Appeals in a timely fashion under Rule 41, ALA. R. APP. P., a conviction becomes "final," and the limitations period of § 2244(d)(1) begins to run, upon issuance of the certificate of judgment.  As such, based upon the commencement and tolling calculations previously set forth, the court concludes that Tolbert's § 2254 petition was timely filed on the last day of the limitations period.  The court now turns to the substance of Tolbert's petition.

> **B.    The Two Claims Raised on Direct Appeal & The Ineffective Assistance**
> **Claim(s) Offered to Excuse Their Procedural Default**
>
> > **Issue XI     Trial court's failure to grant a new trial based upon the fact that Tolbert's co-defendant, Carl Moneyham, allegedly gave perjured testimony**
> >
> > **Issue XII    Trial court's failure to grant a new trial based upon an alleged *Batson* violation**
> >
> > **Issue X      Failure of appellate counsel to petition for certiorari review in the Alabama Supreme Court or to give Tolbert an opportunity to do so**

In this court, Tolbert reasserts the two claims that he raised in his direct appeal,

which are set forth in Issues XI and XII of his petition.  In the former, Tolbert contends that he is entitled to a new trial on the ground that his co-defendant, Carl Moneyham, perjured himself by testifying that he had not been promised anything by the State in exchange for his testimony against Tolbert.  (Pet. at 28-29).  In the latter, Tolbert asserts a *Batson* claim, contending that the State used its peremptory strikes based upon race.  (*Id.* at 30-31).

The State argues, however, that both of these claims are procedurally defaulted as unexhausted because Tolbert undisputedly failed to present them to the Alabama Supreme Court via a petition for certiorari.  (Resp. at 9-11).  Tolbert correctly recognizes that such failure renders these claims unexhausted and, unless excused, subject to the procedural default doctrine, which would preclude their merits from being reviewed on federal habeas.  *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Smith,* 256 F.3d at 1138-41.  Tolbert maintains, however, that his default is due to be excused, because the failure to exhaust was the fault of his appointed appellate counsel.  Specifically, Tolbert relies upon the ineffective-assistance claim he raises in Issue X of his petition (*see* Trav. at 10-14), wherein he complains that his counsel (1) failed to petition for certiorari review in the Alabama Supreme Court and   (2) failed to inform Tolbert of the affirmance decision by the Alabama Court of Criminal Appeals in a timely fashion, thus denying him an

27

opportunity to seek certiorari review.  (Pet. at 26-27).  As to the latter, Tolbert alleges that he did not learn until the evening of October 28, 2005, when he received correspondence from his appellate counsel accompanied by a copy of the opinion, that his conviction had been affirmed by the Alabama Court of Criminal Appeals. (Pet at 26).  He has alleged that such correspondence was dated October 27, 2005, and did not advise him of the steps required to pursue review in the Alabama Supreme Court.  (*See* Tolbert's Response to Order to Show Cause, Doc. 31, at 4 and Tolbert's Affidavit attached thereto at 2).  Tolbert explains that he wrote a letter to his counsel on October 29th, stating a desire to seek review in the Alabama Supreme Court in order to exhaust his state remedies for purposes of federal habeas review, but his counsel sent a reply dated November 1st advising that the conviction had already become final on October 28th, with the issuance of the certificate of judgment.  (Rule 32 Record at 67, 68).  As Tolbert recognizes, he was required to apply for rehearing in the Alabama Court of Criminal Appeals within 14 days of the entry of its decision in order to seek certiorari review in the Alabama Supreme Court.  *See* Rules 39(c) and (d), ALA. R. APP. P.  He thus argues that his counsel was ineffective because he did not take the steps required to seek certiorari review or to at least advise him of the court of appeals decision in time to allow him to do so himself.

A procedural default will be excused where a petitioner can establish both

"cause" for the default as well as resulting "prejudice." *Dretke v. Haley*, 541 U.S. 386, 388 (2004). Deficiency in counsel's performance in failing to preserve a claim for review in state court will excuse a procedural default only if it rises to the level of a violation of the constitutional right to the effective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). In order to prevail on a such claim of ineffective assistance of counsel, a habeas petitioner must first demonstrate that his counsel's performance was deficient, which means that it "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668 688 (1984). To do so, a petitioner must overcome a strong presumption that his counsel's performance fell within the broad range of "reasonable professional assistance," and he must prove any necessary facts by a preponderance of the evidence. *Id.* at 689; *Chandler v. United States*, 218 F.3d 1305, 1313-15 (11th Cir. 2000) (en banc) (explaining that a defendant must show that "no competent counsel would have taken the action that his counsel did take"). Second, a petitioner must show "prejudice," *i.e.*, that there is a reasonable probability there would have been a different verdict but for his counsel's unprofessional errors. *Strickland*, 466 U.S. at 694. A "reasonable probability" is one sufficient to undermine confidence in the verdict. *Id.* In the context of an ineffective assistance on appeal claim, in order to determine prejudice, a court must first perform a review of the merits of an omitted claim. *Philmore v.*

*McNeil*, 575 F.3d 1251 (11th Cir. 2009); *Heath v. Jones*, 941 F.2d 1126, 1132 (11th Cir. 1991). Counsel's performance will be deemed prejudicial if the neglected claim would have a "reasonable probability of success on appeal." *Heath*, 941 F.2d at 1132. *Strickland*'s "prejudice" standard is the same as that used to assess whether "prejudice" has been shown for purposes of overcoming a procedural default. *Mincey v. Head*, 206 F.3d 1106, 1147 & n.86 (11th Cir. 2000).

Further, because Tolbert is in custody pursuant to the judgment of an Alabama state court, under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), habeas relief cannot be granted with respect to any federal claim that was adjudicated on the merits in the Alabama courts unless the rejection was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d); *Smith v. Secretary, Dept. of Corrections*, 572 F.3d 1327, 1349 (11th Cir. 2009). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007). The Eleventh Circuit has explained:

> A state court's decision is "contrary to" clearly established federal law if it and Supreme Court precedent are "diametrically different ... opposite ... [or] mutually opposed." *Williams v. Taylor*, 529 U.S. 362,

30

405 (2000).  Put a little differently, a state court acts contrary to clearly established federal law if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Id.* at 406.

Similarly, "[a] state court's decision amounts to an 'unreasonable application' of federal law if it identifies the correct legal rule from Supreme Court case law, but applies that rule in an unreasonable manner to the facts of petitioner's case." *Breedlove v. Moore*, 279 F.3d 952, 961 (11th Cir. 2002).  An unreasonable application of federal law is not simply an erroneous or incorrect application; it must be objectively unreasonable. *Id.*; *Williams*, 529 U.S. at 409.

*Smith,* 572 F.3d at 1332-33.

In rejecting Tolbert's ineffective assistance claim(s) on this score, the Alabama

Court of Criminal Appeals stated as follows:

Tolbert contends that his appellate counsel was ineffective for failing to seek a writ of certiorari to the Alabama Supreme Court after his conviction was affirmed by this court.  He argues that he should have had an opportunity to exhaust his claim in the state's highest court.

In *Birdsong v. State*, 929 So. 2d 1027 (Ala. Crim. App. 2005), this court held that a defendant could not be denied the effective assistance of counsel as a result of his appellate counsel's not seeking certiorari review because a defendant is not entitled to counsel on a discretionary appeal to the Alabama Supreme Court.  Furthermore, Tolbert did not identify any claim that should have been presented to the Alabama Supreme Court or show that an appeal could have affected the outcome of his trial.  Therefore, the trial court properly dismissed his claim for relief on this ground.

(Rule 32 Appeal Opinion at 4-5).

Because the Alabama Court of Criminal Appeals considered and rejected this

ineffective assistance claim on the merits, Tolbert is required to show that the state

court's decision was "contrary to, or involved an unreasonable application" of

Supreme Court precedent.  28 U.S.C. § 2254(d)(1).  This he cannot do.  To show

cause for failing to follow a state procedural rule, the ineffective assistance of counsel

must occur during a stage when a petitioner had a constitutional right to counsel.

*Payne v. Allen*, 539 F.3d 1297, 1314 (11th Cir. 2008).  Because a defendant has no

constitutional right to counsel to pursue a discretionary state appeal, Tolbert could not

be deprived of the effective assistance of counsel by his attorney's failure to apply for

rehearing in the Alabama Court of Criminal Appeals or to file a petition for certiorari

review in the Alabama Supreme Court.  *See Wainwright v. Torna*, 455 U.S. 586, 587-

88 (1982) (per curiam); *Hernandez v. Wainwright*, 634 F. Supp. 2d 241, 250 (S.D.

Fla. 1986); *Jackson v. Johnson*, 217 F.3d 360, 364-65 (5th Cir. 2000); *Cunningham

v. State*, 611 So. 2d 510, 511 (Ala. Crim. App. 1992).  Likewise, there is no Supreme

Court case holding that a convicted defendant enjoys a constitutional right to counsel

with regard to any circumstances occurring after a state appeal of right is actually

rejected.[22]   Rather, counsel's failure to timely inform a defendant of the decision in

---

[22]Tolbert contends that his counsel had a constitutional duty to advise him about an appeal under *Roe v. Flores-Ortega*, 528 U.S. 470 (2000).  However, that case is distinguishable because it deals with counsel's failure to consult with a criminal defendant about the possibility of pursuing an *appeal as of right*, a stage at which it is beyond doubt that a defendant still enjoys a constitutional right to effective legal counsel.  *See Roe*, 528 U.S. at 477-81.  By contrast, the Supreme Court has held that right to counsel does not extend to discretionary appeals.  *See Torna*, 455 U.S. at 587-88; *Ross v. Moffitt*, 417 U.S. 600, 619 (1974); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).

32

his appeal of right for purposes of pursuing discretionary appeals thereafter does not constitute ineffective assistance because the constitutional right to counsel no longer attaches.  *See Moore v. Cockrell*, 313 F.3d 880, 882 (5th Cir. 2002); *Stires v. Secretary, Dep't of Corr.*, 2009 WL 2407748, *14-15 (M.D. Fla. Aug. 3, 2009); *Cody v. Chase*, 2008 WL 4296614, *9 (S.D. Ga. Sept. 19, 2008); *Mills v. United States*, 2007 WL 4458304, *4 (E.D.N.C. Dec. 14, 2007); *United States ex rel. Johnson v. People of State of Illinois*, 779 F. Supp. 81, 83-84 (N.D. Ill. 1991); *United States v. Ferrell*, 730 F. Supp. 1338, 1340 (E.D. Pa. 1989); *see also Pena v. United States*, 534 F.3d 92, 95-96 (2d Cir. 2008) (counsel not ineffective for failing to inform of the possibility of certiorari review or to assist with filing a petition for such review); *Steele v. United States*, 518 F.3d 986, 988 (8th Cir. 2008) (counsel not ineffective for failing to file a petition for certiorari or to advise defendant of procedure and time limits for filing such a petition); *Miller v. Keeney*, 882 F.2d 1428 (9th Cir. 1989) (no right to counsel in connection with counsel's advising defendant not to petition for certiorari); *but see Smith v. State of Ohio Dep't of Rehab. and Corr.*, 463 F.3d 426, 433-35 (6th Cir. 2006) (duties of appellate counsel on appeal as of right included giving defendant timely notice of decision on direct appeal).

Moreover, even assuming that the performance of Tolbert's counsel, precluding him from seeking certiorari review in the Alabama Supreme Court, was

constitutionally deficient, Tolbert cannot show that the decision of the Alabama Court of Criminal Appeals holding that he failed to demonstrate prejudice under *Strickland* is contrary to, or an unreasonable application of, Supreme Court precedent. Indeed, as the Alabama Court of Criminal Appeals recognized, Tolbert failed in his Rule 32 appeal to offer *any argument whatsoever* that might establish that any underlying claim from his direct appeal would have had a reasonable probability of success had it been presented to the Alabama Supreme Court. *See Heath*, 941 F.2d at 1132. Rather, the discussion of this claim in Tolbert's appellate brief focused *solely* upon whether his counsel's performance was deficient. (*See* Tolbert's Rule 32 Appeal Brief at 11, 13-15). As such, Tolbert failed to exhaust or has otherwise defaulted his claim of prejudice in the Rule 32 proceedings, rendering the claim subject to a procedural default. *See Hallford v. Culliver*, 459 F.3d 1193, 1199 & n.4 (11th Cir. 2006). At the very least, Tolbert clearly failed to establish prejudice under *Strickland* in the Rule 32 proceeding. Either way, such failure doomed not only his ineffective assistance claim in Issue X, but also the two underlying claims from his direct appeal, Issues XI and XII, the procedural default of which Tolbert argues is due to be excused based upon Issue X.

But even if the court were to reach the merits of the two direct appeal claims, the court would conclude that neither would warrant habeas relief. In Issue XI, he

contends that he was entitled to a new trial on the basis that his co-defendant, Carl Moneyham, gave perjured testimony at trial, to the effect that he had not entered into a deal with the State in exchange for his testimony against Tolbert. The record shows that before trial, Tolbert moved to have the State disclose any deals or arrangements it had with any witnesses. At a pretrial hearing, the prosecutor acknowledged that the State had made a "deal" with Moneyham, but only to the extent that "the State will look at his case favorably if he testifies truthfully in this [Tolbert's] case." (Trial Record at R. 11). At trial on December 7, 2004, Moneyham testified on direct examination that he was a co-defendant in the case but that the State had not promised him anything in exchange for his testimony against Tolbert. (*Id.* at R. 328-29). On cross-examination by Tolbert's counsel, Moneyham testified as follows:

Q.    Mr. Moneyham, have you been promised anything for this testimony?

A.    No.

Q.    Have you been told that it would be better for you if you testified?

A.    No.

Q.    Then why are you testifying?

A.    Just telling the truth.

Q.    So you haven't made any deals with the district attorney?

A.    No, sir.

Q.    Now, this case is still pending on you, is that correct?

A.    Yes, sir.

Q.    Did you hope to have something come out of this?

A.    Not really.

Q.    So, you are going to be tried for capital murder, is that your wish?

A.    Yes, sir.

(Trial Record at R. 357-58).

Tolbert was convicted on December 9, 2004.  The presentence investigation report prepared for the sentencing hearing on February 23, 2005, indicates that on December 14, 2004, a week after Moneyham testified and four days after Tolbert's trial ended, Moneyham pleaded guilty to obstruction of justice and received a sentence of 24 months probation.  (*Id.* at C. 158).  Shortly after the sentencing hearing, Tolbert moved for a new trial.  He alleged, among other things, that the court had erred by permitting the prosecutor's use of perjured testimony by Moneyham, based upon the fact that he testified that he had not been given a deal for his testimony and that he was going to trial on his own capital murder charge, when he had a "very sweet and unprecedented deal" whereby he received only probation, despite being indicted for capital murder and had admitted to being a drug dealer and to always carrying a gun.  (*Id.* at C. 169).  The trial court denied the motion without

36

a hearing.

On direct appeal, Tolbert asserted he was entitled to new trial based upon Moneyham's allegedly perjured testimony, pursuant to *Napue v. Illinois*, 360 U.S. 264 (1959), and *Hamilton v. State*, 677 So. 2d 1254 (Ala. Crim. App. 1995). (Tolbert's Direct Appeal Brief at 5-10). The Alabama Court of Criminal Appeals rejected the claim, however, holding that Tolbert had failed to satisfy the requirements for a new trial based upon perjured testimony under *Ex parte Frazier*, 562 So. 2d 560 (Ala. 1989). (Direct Appeal Opinion at 9-14). Specifically, the court held that Tolbert had failed to show that Moneyham actually had a deal with the State at the time of his testimony in which he would receive only a probationary sentence, reasoning: "merely because Moneyham received a generous plea bargain from the State after his testimony does not mean that any deal existed before Moneyham's testimony, especially in light of the prosecutor's statement during the pretrial hearing that no such deal existed." (*Id.* at 13). Thus, it was not evident, the court concluded, that Moneyham's testimony on the particular matter was actually false. The court similarly concluded that Tolbert was not entitled to a new trial based upon Moneyham's testimony indicating more broadly that he was not expecting anything at all from the State in exchange for his testimony, notwithstanding the prosecutor's acknowledgment at the pretrial hearing that the State had agreed to "look favorably"

37

on Moneyham's case in exchange for his testimony.  (*Id.*)  The court explained that because Tolbert knew that fact even before trial, he failed to satisfy the requirement of *Frazier* that, in order to support a new trial, evidence tending to prove a witnesses perjured testimony was not discovered until after trial.  (*Id.*); *see also Frazier*, 562 So. 2d at 570.

It is not clear that the Alabama Court of Criminal Appeals actually considered this claim as one having a federal constitutional dimension, notwithstanding that Tolbert did fairly raise it as such.  In particular, that court did not reference the United States Supreme Court's *Napue* decision relied upon by Tolbert, nor did it cite any other federal court case or federal constitutional provision in its discussion of the claim.  Moreover, the Alabama Supreme Court case principally relied upon by the court of criminal appeals, *Ex parte Frazier*, deals with the issue of when due process principles require a new trial because new evidence comes to light demonstrating that a witness's testimony was perjured, even though the state did not know it was false at the time of trial.  *See* 562 So. 2d at 568-69.  In *Napue*, by contrast, the Supreme Court addressed the related but distinct issue of whether due process required a new trial where the prosecution had used testimony known at that time to be perjured and failed to take corrective steps.  *See Napue*, 360 U.S. at 265, 269.  Specifically, the *Napue* Court ordered a new trial because the prosecution had knowingly used false

38

witness testimony to the effect that he had not been promised anything by the state in exchange for his testimony, when the assistant state's attorney had, in fact, promised him consideration. *Id.*, 360 U.S. at 269-72. That is effectively what Tolbert was contending had occurred at his trial, and asked the Alabama Court of Criminal Appeals to grant him the same relief ordered in *Napue*.

However, this case is distinguishable from *Napue* in that, as the Alabama Court of Criminal Appeals concluded, the evidence does not establish that Moneyham's testimony was actually false insofar as it might be construed as denying that he had any particular plea bargain arrangement with the State at the time of his trial testimony. *See Carr v. Schofield*, 364 F.3d 1246, 1255-56 (11th Cir. 2004). Tolbert's case is also distinguishable from *Napue* in that, as the Court of Criminal Appeals also recognized, the prosecutor had, in fact, disclosed to Tolbert's counsel prior to trial that the prosecutor had agreed to "look favorably" upon Moneyham's pending case if he were to testify truthfully at Tolbert's trial. Accordingly, Tolbert's counsel had an opportunity to take steps to impeach Moneyham's testimony on that point. "[T]he Government can discharge its responsibility under *Napue* and *Giglio* to correct false evidence by providing defense counsel with the correct information at a time when recall of the prevaricating witnesses and further exploration of their testimony is still possible." *United States v. Barham*, 595 F.2d 231, 243 n.17 (5th Cir. 1979) (citing

*United States v. Decker*, 543 F.2d 1102, 1105 (5th Cir. 1976)); *see also Beltran v. Cockrell*, 294 F.3d 730, 736 (5th Cir. 2002) ("'[T]here is no violation of due process resulting from prosecutorial non-disclosure of false testimony if defense counsel is aware of it and fails to object.'" quoting *DeMarco v. United States*, 928 F.2d 1074, 1076 (11th Cir. 1991)).

Moreover, under *Napue* and its progeny, a constitutional error occurs, and the conviction must be reversed, only "if 'the false testimony could ... in any reasonable likelihood have affected the judgment of the jury.'" *Occhicone v. Crosby*, 455 F.3d 1306, 1309 (11th Cir. 2006) (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972), quoting *Napue*, 360 U.S. at 271); *see also Ferguson v. Secretary Dept. of Corr.*, __ F.3d ___, 2009 WL 2605405, *18 n.36 (11th Cir. Aug. 26, 2009). The court concludes that Tolbert cannot meet that standard of materiality. Although the court is quite unimpressed with the answers provided by Moneyham during this colloquy, the court does not find it to be substantial in view of all the evidence. Besides Moneyham's testimony that he saw the petitioner outside, standing over the victim, with the gun immediately after the shorts were fired (Trial Record at R. 339, 350-51), Ardis testified that he and the petitioner decided to rob the others at gun point while Moneyham was inside getting the drugs (*id.* at R. 371), they told them to get on the ground (*id.* at R. 374), they robbed them, and were about to leave when the

petitioner shot the victim because he moved (*id.* at R. 374-76).  Oliver identified the

petitioner at the trial as the shooter.  (*Id.* at R. 257, 259, 279-80, 284).  Dericus Martin

testified about the drug deal, waiting in the car, the robbery, and two shots being fired

by one of the robbers who he did not know.  (Trial Record at R. 208-217).  Andre

Martin testified that Davis Ardis had a gun drawn on him (Andre) when he heard

Ardis say, "He's moving; he's moving."  (*Id.* at R. 176).  Immediately after that,

Martin heard the gun shots fired by the other robber.  (*Id.*).  Martin knew it was not

Ardis who fired because Ardis still had a gun drawn on him (Andre).  (*Id.*).  The

petitioner presented testimony from his girlfriend that he was with her during the time

of the robbery.  (*Id.* at R. 405-16).  That testimony was clearly rejected by the jury.

This claim is without merit.

Likewise, Tolbert would not be entitled to relief on Issue XII, setting forth his

claim under *Batson v. Kentucky*, 476 U.S. 79 (1986), which prohibits the exercise of

peremptory challenges based upon race.  *Batson* provides a three-step process for a

trial court to use in

adjudicating a claim that a peremptory challenge was based on race:

> First, a defendant must make a prima facie showing that a
> peremptory challenge has been exercised on the basis of
> race[; s]econd, if that showing has been made, the
> prosecution must offer a race-neutral basis for striking the
> juror in question[; and t]hird, in light of the parties'

> submissions, the trial court must determine whether the
> defendant has shown purposeful discrimination.

*Snyder v. Louisiana*, ___ U.S. ___, ___, 128 S.Ct. 1203, 1207 (2008).

Tolbert's *Batson* claim was rejected by the trial court at the *prima facie* stage. Tolbert's trial counsel attempted to make a *prima facie* case by pointing out that the prosecution used 12 of its 15 peremptory strikes, or 80 percent, to excuse African-American members of the venire, along with the fact that all of the persons involved in the case, including the defendant, his alleged accomplices, the victim, and witnesses were also African American. (*See* Trial Record at R. 140). The trial court held that such a showing was insufficient to establish a *prima facie* case, and it therefore did not require the prosecution to offer race-neutral explanations for any of its peremptory strikes. On appeal, the Alabama Court of Criminal Appeals affirmed, stating that the trial court was correct, relying upon Alabama precedent holding that, under *Batson* and its progeny, "statistics alone are not sufficient to establish a *prima facie* case of racial discrimination." (Direct Appeal Opinion at 5 (citing *Gavin v. State*, 891 So. 2d 907, 948 (Ala. Crim. App. 2003)). The court of criminal appeals further explained:

> While it is true the striking of one person for a racial reason is a
> violation of the principles of *Batson*, and grounds for reversal, it is
> equally true that "[m]erely showing that the challenged party struck one
> or more members of a particular race is not sufficient to establish a

prima facie case." *Edwards* [*v. State*, 628 So. 2d 1021, 1024 (Ala. Crim. App. 1993)]. "'"[I]t is important that the defendant come forward with facts, not just numbers alone, when asking the [trial] court to find a prima facie case of racial discrimination." *McElemore v. State*, 798 So. 2d 693, 696 (Ala. Crim. App. 2000), quoting *Mitchell v. State*, 579 So. 2d 45, 48 (Ala. Crim. App. 1991), quoting in turn, *United States v. Moore*, 895 F.2d 484, 485 (8th Cir. 1990).

(Direct Appeal Opinion at 5 (additional citation omitted)).  Applying these principles

to Tolbert's case, the court of criminal appeals concluded as follows:

> Here, Tolbert's only argument offered in support of his *Batson* motion was the number of strikes used by the prosecutor against African-Americans and the fact that the people involved in the incident were African-American, including the codefendants and the victim. Tolbert did not allege that the struck veniremembers shared only the characteristic of race, that there was a lack of meaningful voir dire directed at African-American veniremembers, that African-American and Caucasian veniremembers were treated differently, or that the prosecutor had a history of using peremptory challenges in a manner that discriminated against African-American veniremembers.  Rather, Tolbert merely noted that the State had exercised 12 of its 15 strikes, or 80 percent, against African-Americans, and that the people involved in the incident were African-American.  The record, however, contains no documents showing the race of the prospective jurors or the race of the jurors who sat on Tolbert's jury; neither the list of prospective jurors nor the jury strike list is contained in the record.  Therefore, we have no way of knowing the racial composition of the venire or of the petit jury. ... Based on the scant record before us, we cannot say that the number of strikes used by the prosecutor against African-Americans coupled with the fact that the people involved in the incident were African-American was enough to raise an inference of discrimination. ...  Therefore, the trial court did not err in denying Tolbert's *Batson* motion on the ground that he failed to establish a prima facie case of discrimination.

(Direct Appeal Opinion at 7-8 (footnote and citations omitted)).

43

Because Tolbert's *Batson* claim was rejected on the merits, he cannot prevail in this court unless the Alabama Court of Criminal Appeals' decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *McGahee v. Alabama Dep't of Corr.*, 560 F.3d 1252, 1255 (11th Cir. 2009).

As now, Supreme Court precedent at the time of Tolbert's direct appeal in October 2005 established that a defendant making a *Batson* challenge has the initial burden "make out a *prima facie* case 'by showing that the totality of the relevant facts gives rise to an inference of [racially] discriminatory purpose.'" *Johnson v. California*, 545 U.S. 162, 168 (2005) (quoting *Batson*, 476 U.S. at 93-94).  The Supreme Court had further explained that

> [i]n deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances.  For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination.  Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose.  These examples are merely illustrative.

*Batson*, 476 U.S. at 96-97.

The question before the court, then, would be whether the Alabama Court of

44

Criminal Appeals' decision that Tolbert had not raised an inference of discrimination was contrary to, or based on an unreasonable application of, Supreme Court law as it existed in October 2005.  The court would conclude that it was not.  The only argument offered by Tolbert at trial in support of a *prima facie* case was that the prosecutor used 12 of 15 (80%) peremptory strikes against African-American members of the venire, along with that all of the individuals involved in the incident were African-American.  The Alabama Court of Criminal Appeals held that such fact, standing alone, was not enough to raise an inference of discrimination in this case, particularly because the record did not reveal the racial composition of either the venire as a whole or of the petit jury that convicted Tolbert.  The Alabama Court of Criminal Appeals' decision was not based on the wrong rule of law and did not differ from a Supreme Court holding based on similar facts.  Moreover, the Supreme Court has recognized that "whether a challenge to a black juror has evidentiary significance ... may differ if the venire consists mostly of blacks or whites."  *United States v. Armstrong*, 517 U.S. 456, 468 (1996).  Tolbert has not presented, and independent research does not reveal, a case in which the Supreme Court was faced only with a statistical argument or where there was a lack of evidence in the record of the racial makeup of the venire or the petit jury.  Thus, because there is no Supreme Court precedent on point, the Alabama Court of Criminal Appeals' conclusion that the

45

state's pattern of strikes was insufficient in itself is not contrary to clearly established federal law within the meaning of § 2254(d)(1). Nor did the Alabama Court of Criminal Appeals unreasonably apply *Batson*. Although the statistic presented may be suggestive of discrimination, in that the state used 80% of its 15 peremptory strikes against African-Americans, the Alabama Court of Criminal Appeals' determination that such statistic was not enough given the facts of the case, including the informational gaps in the appellate record, was not objectively unreasonable. *See Trawick v. Allen*, 520 F.3d 1264, 1267-68 (11th Cir. 2008) (holding that Alabama Supreme Court's determination, that no *prima facie* showing of gender discrimination was made out where prosecution used 11 of 14 peremptory strikes to remove women, was not contrary to, or an unreasonable application of, Supreme Court precedent under § 2254(d)); *Presley v. Allen*, 274 Fed.Appx. 800, 804-05 (11th Cir. April 21, 2008) (unpublished) (holding that although the state struck all but one of the black members of the venire and used 78% of its strikes against women, Alabama Supreme Court's decision that a *prima face* case was not made out was not contrary to, or an unreasonable application of, federal law). As such, Tolbert would not have been entitled to habeas relief on his *Batson* claim even if it had been properly preserved for review.

### C.   Tolbert's Remaining Claims of Ineffective Assistance of Counsel

**Issue VII     Failure to move to dismiss the indictment on the ground that Ala. Code § 13A-5-40 is unconstitutional**

In this claim, Tolbert contends that his trial counsel was ineffective on the ground that he failed to move to dismiss the indictment on the ground that Ala. Code § 13A-5-40(a)(2) (1975)[23], the statute defining the murder-during-a-robbery capital offense for which Tolbert was indicted, is unconstitutional, on the theory that the Alabama Constitution of 1901 violates the Federal Constitution.  In support, he argues simply that the Alabama Constitution "was declared unconstitutional because it was enacted with the sole intent to establish white supremacy (sic) within Alabama in violation of the Equal Protection Clause ... ."  (Pet. at 21 (citing *Hunter v. Underwood*, 471 U.S. 222 (1985)).   The State maintains that this claim is procedurally defaulted because it was rejected by the Alabama Court of Criminal Appeals on a state procedural ground.  (Resp. at 16).  The court agrees with the State.

Federal courts do not review a procedurally defaulted state collateral claim in a § 2254 petition if the petitioner failed to substantially comply with a state procedural rule, *Lee v. Kemna*, 534 U.S. 362, 375-76, 382 (2002), the last state court to review the claim clearly and expressly stated that its judgment rested on the

---

[23]Ala. Code § 13A-5-40 (1975) provides in relevant part:
(a) The following are capital offenses:
  * * *
  (2) Murder by the defendant during a robbery in the first degree or an attempt thereof committed by the defendant.

47

petitioner's failure to substantially comply with the state procedural rule, and the rule was firmly established and regularly followed when applied by the state court. *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001); *Hill v. Jones*, 81 F.3d 1015, 1022 (11th Cir. 1996). In its opinion affirming the denial of Tolbert's Rule 32 petition, the Alabama Court of Criminal Appeals rejected this claim as "insufficient to entitle Tolbert to relief," because it failed to comply with Rule 32.6(b), ALA. R. CRIM. P., which requires "a clear and specific statement of grounds upon which relief is sought, including full disclosure of the factual basis of those grounds." (*See* Rule 32 Appeal Opinion at 8-9). Rule 32.6 embodies a state procedural rule that has been firmly established and regularly followed by the Alabama courts. *Jenkins v. Bullard*, 210 Fed. Appx. 895, 899 (11th Cir. 2006) (unpublished). Accordingly, this claim has been procedurally defaulted.

Alternatively, even if this claim were preserved, it is devoid of merit. Even now Tolbert fails to articulate any colorable argument in support of his contention that his counsel should have argued that § 13A-5-40(a)(2) is invalid, apparently on the theory that an unrelated provision of the Alabama Constitution dealing with voting rights was held unconstitutional in *Hunter*. Suffice it to say that no court has ever held or suggested that § 13A-5-40(a)(2) is itself racially discriminatory or otherwise invalid. "A lawyer cannot be deficient for failing to raise a meritless

48

claim." *Freeman v. Attorney Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) (citing *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001)).  Accordingly, Tolbert's trial counsel was not ineffective for failing to raise his frivolous argument.

**Issue I**          **Failure to move to dismiss the indictment on the ground that it did not specifically allege accomplice liability**

Tolbert contends that his trial counsel was ineffective for failing to move to dismiss the indictment because it did not give him notice, allegedly required under Alabama law, that he would be tried under a theory of accomplice liability.  (Pet. at 8-9).  However, as stated by the Alabama Court of Criminal Appeals in rejecting this claim, Alabama law does not require the State to notify the defendant in the indictment or otherwise that it is proceeding under a complicity theory.  (*See* Rule 32 Appeal Opinion at 5); *Johnson v. State*, 612 So. 2d 1288, 1297 (Ala. Crim. App. 1992); *McGowan v. State*, 990 So. 2d 931, 984-85 (Ala. Crim. App. 2003); *Johnson v. Nagle*, 58 F. Supp. 2d 1303, 1346 n.36 (N.D. Ala. 1999); *accord United States v. Martin*, 747 F.2d 1404, 1407 (11th Cir. 1984) ("Aiding and abetting need not be specifically alleged in the indictment").  Moreover, the court would note that the indictment charged that Tolbert either committed capital murder during a robbery, in violation of Ala. Code § 13A-5-40(a)(2), or, in the alternative, that he "did aid or abet in said offense."  (Trial Record at C. 21).  Thus, although it was not required to do so,

49

the indictment actually *did* advise Tolbert specifically that he was charged under an accomplice liability theory.  *See Dawson v. State*, 675 So. 2d 897, 902 (Ala. Crim. App. 1995) ("[A] person is criminally liable, as an accomplice, for all crimes committed by another if '[h]e aids or abets such person in committing the offense.'" (quoting Ala. Code § 13A-2-23(2) (1975)).  Because Tolbert fails to show either deficient performance or prejudice, this claim affords him no basis for relief.

### Issues II & III       Failure to object on hearsay grounds to testimony of Latory Andre Martin

Tolbert argues that his trial counsel was ineffective because he failed to object on hearsay grounds to two statements made at trial by a state witness, Latory Andre Martin ("Latory").  Specifically, Tolbert relates that on direct examination, Latory testified that his brother, Dericus Martin ("Dericus"), had told Latory that he, Dericus, had given Carl Moneyham $530.00.   Such testimony, Tolbert contends, was improperly used to establish the predicate theft underlying his felony murder conviction (Issue II, *see* Pet. at 10-11).   Tolbert likewise complains that Latory testified that Dericus told him they were going to buy drugs from Moneyham, thereby improperly establishing the motive for the robbery and the murder.  (Issue III, *see* Pet. at 12).  Tolbert argues that without Latory's testimony, the evidence would have been insufficient to corroborate the testimony of co-defendants, as required by Ala. Code

§ 12-21-222 (1975), or to prove that a robbery occurred, as required to convict on a

felony-murder charge.

In rejecting these ineffective-assistance claims, the Alabama Court of Criminal

Appeals stated as follows:

> In its motion to dismiss Tolbert's petition, the State pleaded that Martin's testimony was admissible as a present sense impression under Rule 803(1), Ala. R. Evid.  Tolbert responded that this exception was inapplicable because the record did not indicate the time that the statements were made.  The trial court may take judicial notice of its own records. *Turley v. State*, 356 So. 2d 1238 (Ala. Crim. App. 1978). Evidence at Tolbert's trial established that four people, Latory Andre Martin, Dericus Martin, Kenya Oliver, and Alan Atchison – drove to Bessemer together to make a drug purchase and that all of them were present when Dericus gave Moneyham approximately $500 to buy the drugs.  Because Martin's testimony was based on his own observations as well as on Dericus's statements, Tolbert's counsel did not err in failing to object to the testimony as hearsay.  See *Miller v. State*, 570 So. 2d 1275 (Ala. Crim. App. 1990) (where report was admissible under business records exception, counsel could not be held ineffective for failing to object to its admission).  Therefore, the trial court correctly dismissed this claim.

(Rule 32 Appeal Opinion at 6).

Tolbert fails to offer any substantial or otherwise convincing argument

undermining the rationale or the correctness of the conclusion of the Alabama Court

of Criminal Appeals on these claims.  He falls even farther short of establishing that

the state court's resolution of these claims was "contrary to, or involved an

unreasonable application of, clearly established Federal law," as required to support

habeas relief.  28 U.S.C. § 2254(d).  Moreover, as the State argued in the Rule 32 proceedings, Tolbert has also failed to show that the outcome of his trial would have been different in any event, especially given that Dericus and Kenya Oliver also testified to giving Moneyham money to buy drugs (Trial Record at R. 213, 257). Accordingly, these claims are due to be denied.

> **Issue IV     Failure to move for acquittal based upon insufficient corroboration of accomplice testimony**

Tolbert contends that his trial counsel was ineffective for failing to move for a judgment of acquittal on the grounds that the State failed to provide sufficient evidence, other than the testimony of accomplices, tending to connect Tolbert with the commission of the offense, *see* Ala. Code § 12-21-222 (1975); *Ex parte Stewart*, 900 So. 2d 475, 477-81 (Ala. 2004).  (Pet. at 13-14).  Specifically, Tolbert claims that there was insufficient evidence to corroborate his identification as the shooter.  The Alabama Court of Criminal Appeals rejected this claim because a state witness, Kendra Oliver, who undisputedly was not an accomplice, identified Tolbert in court as the person who robbed him and shot Achison.  (*See* Rule 32 Appeal Opinion at 7). Tolbert maintains that Oliver's testimony was insufficient corroboration because Tolbert's counsel was able on cross-examination to have Oliver erroneously identify a photograph of Tolbert's brother as the person he had chosen in a pretrial line-up.

The Alabama Court of Criminal Appeals held, however, that Oliver's confusion about Tolbert's brother went to the weight and credibility of Oliver's in-court identification, not its admissibility, and that such identification was sufficient *prima facie* evidence of corroboration.  (*Id.*, citing *Battle v. State*, 645 So. 2d 344 (Ala. Crim. App. 1994)). As such, any motion for judgment of acquittal on this ground would have been fruitless.  *See James v. State*, 529 So. 2d 1069, 1070 (Ala. Crim. App. 1988) (holding that trial court had correctly denied defendant's motion for judgment of acquittal based on alleged lack of corroboration because testimony of would-be victim left alive by accident identifying the defendant as the murderer was direct evidence of corroboration, notwithstanding the defendant's challenge the victim's credibility based upon her impeachment).  As the Alabama Court of Criminal Appeals held, Tolbert's trial counsel cannot be ineffective for failing to raise a meritless argument. (Rule 32 Appeal Opinion at 7, citing *Magwood v. State*, 689 So. 2d 959 (Ala. Crim. App. 1996)); *Freeman,* 536 F.3d at 1233.  Tolbert is entitled to no relief on this claim.

**Issue V**      **Failure of appellate counsel to claim that Tolbert was entitled to a new trial based on threats made to the jury**

Tolbert contends in this court that his appointed counsel on direct appeal was ineffective because he failed to pursue a claim that the trial court had erred in denying his trial counsel's motion for a mistrial based upon threatening "comments" made to

the jury by Tolbert's own family, which Tolbert says caused jurors to fear for their personal safety. (Pet. at 15). Tolbert relates that the trial judge denied the motion on the grounds that, while some jurors may have "overheard some zealous fervent conversation in the hallway," no juror had been contacted at home, and the judge did not believe that anyone was "truly fearful for their life." (*Id.*, quoting Trial Record at R. 516). Tolbert argues, however, that the trial court's basis was "refuted" by testimony from female jurors who allegedly stated that they were concerned about walking to their cars that afternoon," and he suggests that jurors may have thought that if Tolbert's family would resort to violence to prevent his conviction then "surely Tolbert was a chip off the old block." (Pet. at 15). He says that curative instructions from the court could not "un-ring the bell," and that his appellate counsel was constitutionally obligated to raise this issue on direct appeal. (*Id.*) The court concludes, however, that this claim is due to be rejected because it is procedurally defaulted as unexhausted and, alternatively, because it lacks merit.

Before he might be entitled to a federal writ of habeas corpus under § 2254, a petitioner is generally required to have exhausted all remedies that might be available to him in the state courts of Alabama. *See* 28 U.S.C. § 2254(b)(1)(A); *Mancill v. Hall*, 545 F.3d 935, 939 (11th Cir. 2008). The court notes that the State has not argued that this claim is unexhausted. However, a State is deemed to waive the

exhaustion requirement only where it does so expressly through counsel, 28 U.S.C. § 2254(b)(3); *McNair v. Campbell*, 416 F.3d 1291, 1306 (11th Cir. 2005). Exhaustion of state remedies requires presentation of a federal claim through one full round of review in the state's trial and appellate courts. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Dill v. Holt*, 371 F.3d 1301, 1303 (11th Cir. 2004). If a petitioner has failed to exhaust state remedies that are no longer available under state procedural rules, that failure will also constitute a procedural default that will bar federal habeas relief unless a petitioner can establish that the default is due to be excused. *Smith*, 256 F.3d at 1138. A procedural default will be excused in "only two narrow situations." *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008). First, a petitioner may demonstrate "cause" for the default along with "actual prejudice" as a result of the alleged violation of federal law. *Id.* Second, a petitioner can make showing of "actual innocence," whereby he establishes that, "in light of new evidence, it is probable that no reasonable juror would have convicted him," such that enforcing the default would result in a "fundamental miscarriage of justice." *Id.*

Tolbert raised this same claim in his Rule 32 petition in the state trial court. (*See* Exhibit F ("Rule 32 Record on Appeal") at 23). However, upon seeking review of the trial court's denial of Rule 32 relief, Tolbert argued instead that his appellate counsel was deficient for a different reason: that he failed to argue that the trial court

had "failed to *conduct an investigation* of jurors that threats had been made against them by the *victim's* family." (Ex. G ("Tolbert's Rule 32 Appellate Brief") at 13 (emphasis added)). Such is, the court believes, distinct and separate from what Tolbert had asserted in the Rule 32 trial court and what he argues in this court, *i.e.*, that threatening remarks were made by *Tolbert's own* family and that his appellate counsel was ineffective for failing to argue that the trial court's *articulated basis* for denying the motion was *contradicted or unsupported* by the record. Indeed, the State expressly argued in the Alabama Court of Criminal Appeals that the claim Tolbert was raising on appeal was not the same one that he had presented below in the Rule 32 court. (State's Rule 32 Appeal Brief[24] at 12-13). Moreover, it appears that the claim actually addressed by the Alabama Court of Criminal Appeals in the Rule 32 appeal was the "failure-to-investigate" claim that Tolbert raised in his appellate brief, related to alleged comments by the victim's family. (*See* Rule 32 Appeal Opinion at 3-4). By failing in his Rule 32 appeal to raise his instant ineffective-assistance claim, premised upon remarks made by Tolbert's own family and appellate counsel's failure to claim that the basis of trial judge's ruling was belied by the record, Tolbert failed to exhaust the claim. *See Hallford,* 459 F.3d at 1199 & n.4 (holding that *Brady* claim was procedurally defaulted where it was abandoned during state post-conviction

---

[24]The State's Brief in the Rule 32 Appeal is Ex. H.

proceedings by petitioner's failure to present it in his brief in the Alabama Court of Criminal Appeals).  And because Tolbert can no longer present this claim in the Alabama courts, he does not argue the "actual innocence" exception, and he clearly cannot establish cause for his failure to present the claim to the Court of Criminal Appeals, the claim is procedurally defaulted.  *Id.*

In the alternative, even if this claim is deemed to have been exhausted or the procedural default waived, the claim is due to be rejected on its merits.  Tolbert has wholly failed to demonstrate that pursuit of the mistrial issue on direct appeal would have had any chance of success.  Under Alabama law, a trial court's decision to grant or deny a motion for a mistrial based upon a remark of a third person made to or heard by members of the jury is subject to review on appeal only for abuse of discretion.  *See Harris v. State*, 2 So. 3d 880, 916-17 (Ala. Crim. App. 2007).  Further, "a trial court generally will not be held to have abused its discretion where the trial court investigates the circumstances under which the remark was made, its substance, and determines that the rights of the appellant were not prejudiced by the remark."  *Id.*, 2 So. 3d at 919 (quoting *Minor v. State*, 914 So. 2d 372, 412 (Ala. Crim. App. 2004) (further citations and internal quotation marks omitted)).  The Alabama Court of Criminal Appeals stated in pertinent part in its opinion in the Rule 32 case:

57

> In his response to the State's motion to dismiss [his Rule 32 petition], Tolbert indicated that the trial court conducted an inquiry into the alleged threats; that the court asked the jurors if they could continue their deliberations without bias or prejudice; and that the jurors responded affirmatively. Tolbert did not specify any additional investigation the court should have conducted or show that such investigation was likely to change the outcome of his trial. Therefore, the trial court properly denied his claim.

(Rule 32 Appeal Opinion at 3-4; *see also* Rule 32 Record on Appeal at 75). The record fully supports that determination and that the trial judge conducted a reasonable investigation into the matter and was justified by the testimony presented in finding that the members of the jury could continue and render a fair verdict. (*See* Trial Record R. 496-516). Tolbert cannot show that the trial court abused its discretion in denying the motion for a mistrial, regardless of whether the remarks in question were made by Tolbert's family or the victim's family and also regardless of whether the underlying theory would have been that the trial judge conducted an inadequate investigation of the circumstances surrounding the remarks or that the trial judge's finding that the remarks did not result in material prejudice to Tolbert was unsupported. Tolbert's counsel cannot be ineffective for failing to raise a meritless argument. *Freeman,* 536 F.3d at 1233. Accordingly, this claim is due to be denied.

**Issue VI**      **Failure to move to dismiss the indictment on the ground that it fails to allege all essential elements of the capital murder statute in its entirety**

Tolbert next claims that his trial counsel was ineffective for failing to move to dismiss the indictment on the ground that it fails to allege the elements of the capital murder statute "in its entirety." (Pet. at 16). Tolbert argues at relative length on this claim (*see id.* at 16-20), asserting "that his indictment tracks only part of the elements of the charge of capital murder end (sic) that part is Section 13A-5-40(a), Code of [A]labama (1975) but is devoid of the material elements of the complete statute of what defendant/Petitioner must defend himself against." (*Id.* at 16). For good measure, he peppers this section of his petition with citations to, and quotations from, both *Ring v. Arizona*, 536 U.S. 584 (2002), and *Apprendi v. New Jersey*, 530 U.S. 455 (2000).

This claim, however, is wholly without merit. The offense for which Tolbert was indicted is found in Ala. Code § 13A-5-40(a)(2) (1975), which provides in relevant part:

> (a) The following are capital offenses:
> * * *
> (2) Murder by the defendant during a robbery in the first degree or an attempt thereof committed by the defendant.

The indictment, in turn, charged that Tolbert

> did ... intentionally cause the death of [Achison] by SHOOTING him with a FIREARM ... during the time that [Tolbert] was in the course of committing a theft of U S CURRENCY ... by the use of force against the person of [Achison] by the use of force against the person ..., with intent

59

to overcome his physical resistance of physical power of resistance, while [Tolbert] was armed with a deadly weapon or a dangerous instrument, to wit: A FIREARM, or did aid or abet in said offense, in violation of § 13A-5-40(a)(2) ... .

(Trial Record at C. 21). Tolbert was ultimately convicted of felony murder, which is a lesser included offense of intentional murder committed during the course of a robbery. *Ex parte Peterson*, 890 So. 2d 990, 993 (Ala. 2004); *see also Beck v. Alabama*, 447 U.S. 625, 628 (1980). He was sentenced to life under Alabama's Habitual Felony Offender Act, based upon three prior felony convictions (Trial Record at S.R. 15-19), the existence of which need not be found by a jury under *Apprendi*. *See United States v. Beckles*, 565 F.3d 832, 846 (11th Cir. 2009); *Knight v. State*, 907 So. 2d 470, 482-83 (Ala. Crim. App. 2004). Tolbert does not explain what particular element of the offense was supposedly omitted from his indictment nor what aggravating factor or circumstance increasing his punishment was supposedly determined by a judge rather than a jury in his case, in violation of *Ring* or *Apprendi*. The Alabama Court of Criminal Appeals summarily rejected this claim as being directly refuted by the trial record, thus giving no cause to support an ineffective-assistance claim. (Rule 32 Appeal Opinion at 8). It was clearly correct in doing so. This claim is thus due to be denied.

### Issue VIII   Failure to object to jurors based upon residency qualifications

Tolbert contends that his trial counsel was ineffective for failing to object to members of the venire and who allegedly served on the petit jury who did not meet statutory residency requirements for jury service. (Pet. at 22-23). Under Ala. Code § 12-16-60(a)(1) (1975), in order to serve as a juror in Tolbert's trial, a prospective juror must have resided within the territorial limits of the Bessemer Division of Jefferson County for more than 12 months before the start of the trial. *Keibler-Thompson Corp. v. Steading*, 907 So. 2d 435, 441 (Ala. 2005). Tolbert alleges that three prospective jurors, R.C., T.H., and S.W., each indicated during voir dire that he or she lived in a section of Jefferson County that Tolbert says is within the limits of the Birmingham Division, rather than the Bessemer Division. (Pet. at 22).

The Alabama Court of Criminal Appeals rejected this claim on two grounds. First, it held that there is no inherent prejudice attributed to a trial by nonresident of the county in which the offense was committed, citing *Vaughn v. State*, 395 So. 2d 97 (Ala. Crim. App. 1980). (Rule 32 Appeal Opinion at 9). And second, it stated that Tolbert did not contend that any of the nonresidents in question actually served on his petit jury. (*Id.*) As to the first point, Tolbert responds that his claim is not governed by *Vaughn*, but rather by *Keibler-Thompson*, a civil case in which the Alabama Supreme Court held that the trial court abused its discretion in denying a motion for

61

a new trial based upon a non-resident juror's failure to respond to voir dire asking

whether any of the member of the venire was not a resident of the Bessemer Division.

*See* 907 So. 2d at 442-43.

To resolve this claim, this court need not weigh in on any tension or material

distinctions that might exist between *Vaughn* and *Keibler-Thompson*, nor need the

court actually determine whether any of the three prospective jurors referenced by

Tolbert actually met the residency requirement of Ala. Code § 12-16-60(a)(1).  While

Tolbert does state in his petition that the three members of the venire in question did

serve on his petit jury, he points to nothing in the record to support that assertion.

Indeed, the record is clear that none of the three ultimately sat on the petit jury that

convicted Tolbert.  (*See* Trial Record at R. 509).  As such, there is no prejudice under

*Strickland* based upon counsel's failure to challenge the qualifications of those

members of the venire.  *See Van Poyck v. Florida Dep't of Corr.*, 290 F.3d 1318,

1327-28 (11th Cir. 2002); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001);

*also cf. Giles v. State*, 906 So. 2d 963, 980 (Ala. Crim. App. 2004) (even if

veniremember was unqualified to serve because of prior felony conviction, where he

did not serve on petit jury, no post-conviction relief was warranted, even if the

defendant was forced to exercise a peremptory strike), overruled on other grounds,

*Ex parte Jenkins*, 972 So. 2d 159, 165 (Ala. 2005); *Ross v. Oklahoma*, 487 U.S. 81,

87-88 (1988) (federal right to an impartial jury is not violated where a defendant is required to use a peremptory strike on a veniremember who should have been excused for cause). This claim is due to be denied.

> **Issue IX    Failure to object to jury instructions on the ground that they "took [away]" the jury's "de facto power of nullification"**

Tolbert argues that his trial counsel was ineffective for failing to object to a jury instruction that he says "took the jurys (sic) De Facto power of Nullification to acquittal (sic) Tolbert." (Pet. at 24). Specifically, he claims that his counsel should have objected to the following jury charge:

> In deciding the guilt or innocence of the defendant you are confined to the evidence that has been presented to you from this witness stand. You should not go outside of that evidence in making your decision except to use your common sense and experience.

(*Id.*) Tolbert recognizes that the jury has the power to nullify the law and acquit a defendant even if the evidence is in favor of the government, and he seems to suggest that the above instruction violates due process because it encroaches upon the jury's power to nullify. (*See id.* at 24-25). The Alabama Court of Criminal Appeals rejected this claim on the ground that the instruction in question was a proper and correct statement of the law and that Tolbert's counsel was not deficient in failing to object to it. (Rule 32 Appeal Opinion at 9-10). This court agrees.

"While a jury does have the power to bring in a verdict 'in the teeth of both law and facts,' *Horning v. District of Columbia*, 254 U.S. 135, 138 (1920), its duty is to apply the law as interpreted and instructed by the court. *United States v. Boardman*, 419 F.2d 110, 116 (1st Cir. 1969), cert. denied, 397 U.S. 991 (1970)." *United States v. Trujillo*, 714 F.2d 102, 105 (11th Cir. 1983). Accordingly, a criminal defendant is not entitled to a jury instruction which points up the existence of the practical power of nullification, and a charge instructing the jury on its duty to follow the law is proper. *Trujillo*, 714 F.2d at 105-06; *see also United States v. Funches*, 135 F.3d 1405, 1408-09 (11th Cir. 1998); *Warren v. State*, 72 So. 624, 625 (Ala. 1916). This claim is due to be denied.

### D.   Tolbert's Motions "to Expand the Record," "For Leave to Amend," for Discovery and for an Evidentiary Hearing

Tolbert has filed a host of additional motions that are associated with his habeas petition. He has filed a motion to expand the record (Doc. 19), in which he requests the court to consider various documents. The court finds that said motion is due to be granted, and that the documents he submits are to be considered for what they are worth, although the court finds that they do not entitle Tolbert to relief on his § 2254 petition. Tolbert has also moved for leave to amend his petition in order "to clarify" his claims set forth in Issue V and IX. (Doc. 26). The court finds that such

motion is also due to be granted, and the court has considered that submission for what it is worth, although, again, the court finds that it does not entitle Tolbert to any relief.

Tolbert has also filed several motions in which he seeks to conduct discovery (Docs. 20, 21, 22, 23, and 30), and for this court to hold an evidentiary hearing. (Docs. 18, 24).  "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Thus, while the Federal Rules of Civil Procedure do not apply in federal habeas, the Supreme Court has fashioned certain discovery rules for habeas pursuant to its authority under the All Writs Act, 28 U.S.C. § 1651.  *Bracy*, 520 U.S. at 904.  The most pertinent rule provides:

> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

Rule 6(a), RULES GOVERNING § 2254 HABEAS CASES (quoted in *Bracy*, 520 U.S. at 904).  The Eleventh Circuit has further explained:

> A petitioner "may obtain leave of court to conduct discovery ... upon showing 'good cause,' *Bracy*, 520 U.S. at 904, and diligence in pursuing the claim for which discovery is sought, consistent with 28 U.S.C. § 2254(e)(2).  *Isaacs v. Head*, 300 F.3d 1232, 1249 (11th Cir. 2002).  Good cause is demonstrated       " 'where specific allegations ... show reason to believe that the petitioner may, if the facts are fully developed,

65

be able to demonstrate that he ... is entitled to   relief.' " *Bracy*, 520 U.S.
at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

*Arthur v. Allen*, 452 F.3d 1234, 1247 (11th Cir. 2006)

When deciding whether to grant a federal habeas petitioner's request for an evidentiary hearing, "a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  Because AEDPA provides great deference to state-court determinations, "a federal court must take into account those standards [of review] in deciding whether an evidentiary hearing is appropriate." *Id.*  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*

The court concludes, based on the above standards and the court's discussion of Tolbert's substantive claims, that Tolbert is not entitled to either discovery or an evidentiary hearing.  As such, all of his motions on these matters are due to be denied.

## III.   CONCLUSION

Premised on the foregoing, the court finds as follows:  Tolbert's motion to expand the record (Doc. 19) is due to be **GRANTED**; his motion for leave to amend to "clarify" his claims (Doc. 26) is likewise due to be **GRANTED**; and his motions

seeking discovery and an evidentiary hearing (Docs 18, 20, 21, 22, 23, 24) are all due to be **DENIED**.  Finally, Tolbert's § 2254 petition itself (Doc. 1), is due to be **DENIED** and this action is due to be **DISMISSED WITH PREJUDICE**.  An appropriate order will be entered.

The Clerk is **DIRECTED** to mail a copy of this Memorandum Opinion to the petitioner and counsel of record.

**DONE** this the 24th day of September, 2009.


**VIRGINIA EMERSON HOPKINS**
United States District Judge